**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| CHERYL MELANIE FERNANDEZ | * | |
| Plaintiff, | * | |
| v. | * | Case No. 8:23-cv-839-AAQ |
| WASHINGTON HOSPITALITY SERVICES, LLC | * | |
| | * | |
| Defendant | * | |
| | * | |

**MEMORANDUM OPINION**

This is a dispute over unpaid overtime wages and alleged retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq* and Maryland state law.  Pending before the Court is a Joint Motion and Memorandum for Approval of Settlement of said dispute between the parties pursuant to 29 U.S.C. § 216.  For the reasons discussed below, the Joint Motion shall be GRANTED, and the case will be DISMISSED.

**BACKGROUND**

Plaintiff Cheryl Fernandez is employed by Washington Hospitality Services ("WHS") as a Food & Beverage Manager at the Hilton Garden Inn in Bethesda, Maryland.  ECF No. 1, at ¶ 1. Through the duration of her employment, she was classified as "exempt" for the purpose of minimum wage and overtime laws and was paid on a salary basis.  *Id*.  WHS is an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203(s)(1).  *Id*. at ¶ 3.

According to Plaintiff's Complaint, she was informed when she began employment that she was expected to work five days per week and fifty hours per week.  *Id*. at ¶ 6.  She alleges that,

between August 15 and October 1 of 2022, she typically began work at 5:00 A.M. Eastern Standard Time (EST) and finished between 6:00 and 7:00 P.M. EST with no lunch break, averaging thirteen working hours per day.  *Id*. at ¶ 7.  In her Complaint, Plaintiff alleges that she spent the bulk of her time on non-exempt tasks, including: "organizing, discarding useless items, ordering food, wine and liquor, stocking food, wine and liquor, ordering cooking utensils and equipment, deep cleaning the bar and kitchen, and ordering uniforms for the staff."  *Id*.  After the restaurant opened on October 1, 2022, Plaintiff alleges she began working six to seven days per week and continued doing non-exempt duties including opening the kitchen, preparing breakfast, washing dishes, interacting with customers, helping with seating, helping prepare and serve food, keeping the buffet stocked with food and drinks, washing dishes, taking orders, loading silverware, busing tables, and serving food and drink from the bar.  *Id*. at ¶ 8-9.  When she was not working in the kitchen, she performed non-exempt administrative tasks including tracking inventory, reporting sales revenue, and ordering food and equipment.  *Id*. at ¶ 9.  She alleges that she was not compensated for overtime during either of these periods of work and did not receive the applicable minimum wage.  *Id*. at ¶ 7, 10, 11.

Defendant maintains that Plaintiff was a salaried employee who was exempt from overtime requirements.  ECF No. 9-1, at 2.  After the case was filed, the parties exchanged documents and ultimately agreed to settle all of Plaintiff's claims for $32,000.00, comprised of: $7,979.26 in unpaid wages, $7,979.26 in liquidated damages, and $16,041.48 in attorneys' fees and costs.  *Id*. at 3.  After reaching this agreement, the parties filed the pending Joint Motion for Settlement on June 27, 2023.  ECF No. 9.

**STANDARD OF REVIEW**

When evaluating settlement agreements for approval under the FLSA, courts should approve settlements that "reflect[] a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. Jun. 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In making such a determination, typically, district courts in the Fourth Circuit "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D. Md. 2010)). These considerations include ensuring there is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" by evaluating the following: (1) whether there are FLSA issues actually in dispute; (2) whether the settlement is fair and reasonable in light of the relevant factors; and (3) whether the attorneys' fees, if included in the agreement, are reasonable. *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sep. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2-3 (D. Md. Aug. 31, 2011)). Evaluation of the aforementioned, with discussion of the relevant facts, follows below.

## DISCUSSION

The parties have asked the Court to approve their proposed Settlement Agreement and dismiss this case. I find that approval is proper as the Settlement Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties and includes a reasonable award of attorney's fees.

### A. There is a *Bona Fide* Dispute Between the Parties.

To determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 408 (D. Md. 2014) (citing *Lomascolo*, 2009 WL 3094955, at *16-17). Disagreement over an employee's classification constitutes a *bona fide* dispute for FLSA claims. *See Smith v. David's Loft Clinical Programs, Inc.*, No. 21-cv-03241-LKG, 2022 WL 16553228, at *4 (D. Md. Oct. 31, 2022) (finding a *bona fide* dispute where plaintiffs alleged that they were misclassified as exempt employees under the FLSA and defendants said they relied on legal advice in making their classification). Disagreements over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability. *See Duprey*, 30 F.Supp.3d at 408 (finding a *bona fide* dispute where "parties disagree[d] about Duprey's rate of pay and hours worked").

In their Joint Motion, the parties highlight the FLSA issues that create a *bona fide* dispute. Here, the parties dispute whether Ms. Fernandez was correctly or incorrectly classified as an exempt employee pursuant to the FLSA. ECF No. 9-1 at 5. The parties also dispute the number of hours worked by Ms. Fernandez, impacting the calculation of damages available if liability is found. *Id*. This Court has found both of these issues to constitute *bona fide* disputes. Accordingly, I find that a *bona fide* dispute exists between the parties under the FLSA.

**B. The Settlement Agreement is Fair and Reasonable.**

Next, the Court considers whether a settlement agreement is fair and reasonable. In assessing whether a settlement is fair and reasonable, the Court should evaluate the following six factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions

4

of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of settlement in relation to potential recovery." *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

The first factor asks courts to consider the extent to which discovery has taken place. When looking at this factor, courts assess whether the parties have "had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955, at *11 (citing *In re A.H. Robins Co., Inc.*, 88 B.R. 755, 760 (E.D. Va. 1988)). While the parties in this case did not conduct formal discovery, "[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation [can be] made available for settlement, and the risk and uncertainties for both parties [can be] reduced." *Duprey*, 30 F.Supp.3d at 409. Here, the parties exchanged information to facilitate settlement discussions, including records regarding hours worked and wages. ECF No. 9-1, at 5. After "assess[ing] the strength of each other's respective position[s]," the parties decided that settlement was in their respective best interests. *Id.* As such, this factor weighs in favor of finding that this Settlement is fair.

The second factor looks to the current stage of the proceedings. Settlements can be found to be fair where proceeding further would be difficult and costly and the parties would prefer to end proceedings before making significant investments in litigation. Here, the parties aver that the Settlement resolves the matter and prevents the parties from incurring significant expenses by avoiding the need to "conduct depositions, provide formal written responses to discovery, and engage in further fact gathering to litigate the factual issues in dispute, including the fact-intensive exemption issue." ECF No. 9-1, at 6. *See Black v. Reviera Enter., Inc.,* No. DLB-19-201, 2020 WL 6544820, at *2 (D. Md. Nov. 6, 2020) (holding settlement agreement was fair and reasonable

where parties recognized remaining discovery would require significant investment of time, effort, and financial resources); *Saman*, 2013 WL 2949047, at *4 (finding that the parties' representation that they wished "to avoid the costs of formal discovery, dispositive motions, and a possible trial" bolstered the decision to "engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed."). Given the parties' joint preference to terminate proceedings early rather than invest time and money in litigation, this factor weighs in favor of finding this Settlement Agreement to be fair.

The third factor assesses whether there has been fraud or collusion in the formation of the settlement. There are no facts presented that suggest either, allowing the "presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12. Here, counsel attests that the parties reached this Settlement "while represented by counsel, and during arms-length negotiation." ECF No. 9-1, at 6. While "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed," *Saman*, 2013 WL 2949047, at *5 (citing *Lomascolo*, 2009 WL 3094955, at *12), their representations weigh in favor of approving the Settlement.

Under the fourth factor, courts look to the experience of counsel. Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement. *See Hackett v. ADF Rest. Investments*, 259 F.Supp.3d 360, 366 (D. Md. 2016) (finding a fair and reasonable settlement where counsel had litigated numerous lawsuits involving wage and hour violations). The parties are represented by counsel who have litigated numerous FLSA cases before this Court. ECF No. 9-1, at 6. *See id*. at 11 ("Plaintiff's counsel Suvita Melehy, and other professionals at Melehy & Associates LLC who worked on this case, have significant experience litigating wage-and-hour cases on behalf of

plaintiffs before this Court as well as the federal court for the District of Columbia, the D.C. Superior Court and Maryland state-level courts."). Accordingly, I am satisfied that Plaintiff's counsel is sufficiently experienced in litigating similar matters.

The fifth factor incorporates the opinions of counsel. Counsel's opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement. *Castro v. Early Learning Language Academies, LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021). In their Joint Statement, the parties agree that the Settlement is fair and reasonable and endorse the underlying Agreement. ECF No. 9-1, at 7. This weighs in favor of approving the Settlement.

Applying the sixth factor, courts weigh the probability of a plaintiff's success and the relationship between the amount of the settlement and the potential recovery. Plaintiff faces multiple challenges before her ultimate recovery in this case. First, she must show that she was misclassified as an exempt employee and that she did not spend the majority of her work time performing nonexempt functions. If successful, she must then prove the number of hours overtime worked. The Settlement accounts for a payment of $32,000.00 – $15,958.52 of which would go to Ms. Fernandez. ECF No. 9-1, at 3. Of that amount, $7,979.26 would be designated as unpaid wages and $7,979.26 would be designated as liquidated damages. *Id.* The parties aver that this constitutes "at least 100% of her unpaid wages and the maximum amount of liquidated damages [available] under the FLSA." *Id. Cf. Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *2 (D. Md. Jun. 14, 2021) (approving settlement in which Plaintiff received, in total, twenty percent of claimed backpay); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2 (D. Md. Mar. 24, 2021) (approving settlement in which Plaintiff received, in total,

fourteen percent of claimed backpay).  The relationship between potential and actual recovery is enough to weigh in favor of approving the Settlement.

This Settlement does include a general release of claims by the Plaintiff that exceed those specified in the Complaint.  ECF No. 9-2, at 3.  Such a release can render a settlement agreement unreasonable.  *Duprey*, 30 F.Supp.3d at 410 (referencing *Moreno v. Regions Bank,* 729 F.Supp.2d 1346, 1352 (M.D. Fla. 2010)); *Saman*, 2013 WL 2949047, at *5.  However, so long as the "employee is compensated reasonably for the release executed, the settlement can be accepted" and I do not need to consider the "reasonableness of the settlement as to the non-FLSA claims." *Duprey*, 30 F.Supp.3d at 410*. See Gue*, 2021 WL 2414866, at *1 (finding settlement reasonable despite presence of general release); *Lee*, 2021 WL 1117274, at *1 (same).  While the nature of Plaintiff's ongoing employment with Defendant merits some hesitation regarding the inclusion of such a release, the preservation of Plaintiff's administrative rights, un-waivable claims, unfair labor charges, and vested benefits claims counsels in favor of approving the Settlement. Additionally, the Court notes that the waiver does not apply to any claims that originate after the Agreement's execution date.  ECF No. 9-2, at 3.

Upon consideration of these factors, the Court finds the Settlement to be fair and reasonable.

**C.  The Settlement Agreement Awards Reasonable Attorneys' Fees.**

The Settlement Agreement must also contain reasonable provisions for allocating attorneys' fees.  *Duprey*, 30 F.Supp.3d at 411.  Here, the parties have decided upon an allocation of $16,041.48 in attorneys' fees.  ECF No. 9-1, at 3.

"Ultimately, of course, any award of attorneys' fees to Plaintiff will turn on application of the traditional lodestar methodology factors." *Saman*, 2013 WL 2949047, at *6.  The lodestar

approach "multiplies 'the number of hours reasonable expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)).  In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Saman*, 2013 WL 2949047, at *6 (citing *Barber v. Kimbrell's Inc.*, 557 F.2d 216, 226 n. 28 (4th Cir. 1978)).  This Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules (D. Md. Jul. 2023).

Often, attorneys discount their total award when asking for settlement approval.  *See Majed Tomeh v. Veriphyr, Inc.*, No. 8:21-cv-02914-AAQ, 2022 WL 1422897, at *4 (D. Md. May 5, 2022) (awarding counsel's request of $30,000 to compensate for $45,200 in fees and costs incurred);

*Galizia v. Ricos Enterprises, Inc.*, No. DKC 21-2592, 2022 WL 374511, at *3 (D. Md. Feb. 8, 2022) ("Clearly, the fee requested is a small percentage of the actual fees incurred and is entirely reasonable."); *Nyamira v. Little Kampala Services, LLC*, No. DKC 17-3379, 2018 WL 5026371, at *4 (D. Md. Oct. 17, 2018) (awarding counsel's request for $1,500 in fees to compensate for over $11,000 in fees and costs incurred). Courts may consider the extent to which a fee request in a FLSA settlement exceeds the amount awarded to a plaintiff. *See Gionfriddo v. Jason Zink, LLC.*, No. RDB-09-1733, 2012 WL 1077765, at *1 (D. Md. Mar. 29, 2012) (finding an award of attorneys' fees unreasonable where the award was several times more than the amounts paid to individual plaintiffs).

Although counsel provides limited information specifying the hours spent on this case, the Court will grant the request for fees. Plaintiff's counsel attest that they "devoted in excess of 35 hours to this case since March 2023" and that such a number is "reasonable given [that] counsel needed to conduct the requisite, pre-filing case investigation, draft the complaint, effect service on the Defendant, review time and other records, calculate damages, negotiate the terms of the settlement agreement, and prepare and file the joint motion for approval." ECF No. 9-1, at 8. Additionally, counsel avers that the "actual attorneys' fees and costs incurred to date by Plaintiff's counsel exceeds $18,000" but that they "have voluntarily reduced the total attorneys' fees and costs in the interest of settlement." *Id*. Counsel further notes that "this case did not present any truly novel or difficult questions" and that "Plaintiff's counsel did not forego any cases to work on this case."[1] *Id*. at 9. Given that thirty-five hours is a reasonable amount of time to complete the

---

[1] Plaintiff's counsel fails to provide a fee breakdown listing the services rendered and the attorneys who worked on the case, as well as the years of experience for each attorney. While they do provide the standard hourly rates for the attorneys and staff who may have worked on this case, I note that all of the provided rates exceed the permissible rates under Appendix B to the District of Maryland's Local Rules, which cap the hourly rates for lawyers admitted to the bar for twenty

activities Plaintiff has identified, and considering the degree of success counsel achieved for Plaintiff, the Court will award counsel their requested fees.

**CONCLUSION**

For the reasons stated above, the Joint Motion for Judicial Approval of Settlement will be GRANTED and this case shall be DISMISSED with prejudice.

So ordered.

Date:   July 19, 2023                                    ___/s/_____
                                                        Ajmel A. Quereshi
                                                        United States Magistrate Judge

---

years or more at $475.00, for lawyers admitted to the bar for five to eight years at $300.00, and for paralegals and law clerks at $150.00.  U.S. District Court, District of Maryland, Local Rules, Appendix B (D. Md. Jul. 2023).  *See* ECF No. 9-1, at 9 (listing Omar Vincent Melehy's hourly rate at $625.00, Suvita Melehy's hourly rate at $575.00, Andrew Balashov's hourly rate at $350.00, and the paralegal/law clerk hourly rate at $180.00).  Counsel are reminded of the Local Rules' requirements regarding requests for fees and are encouraged to include such documentation in the future to expedite review of motions to approve settlements.